IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  11-cv-682-MJR-SCW |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| FE FUENTES, MAGID FAHIM, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on a Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc., Magid Fahim, and Fe Fuentes (Docs. 46 & 48).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Defendants' motion for summary judgment (Docs. 46 & 48).

## II. Findings of Fact

### A. Procedural Background

On August 10, 2011, Plaintiff filed his Complaint alleging deliberate indifference by Wexford, Fuentes, and Fahim. Plaintiff also alleges that Defendants Fuentes and Fahim unlawfully retaliated against them (Doc. 10).

Specifically, Plaintiff's Complaint alleges that Defendants have failed to properly treat his serious medical conditions because of the cost-saving policies of Wexford and because of his filing grievances against them (Doc. 10). Plaintiff alleges that he has suffered from abdominal and back pain, sore throat, and increasing asthma problems which Defendants have failed to properly treat (Doc. 1). Plaintiff alleges that his throat is sore and irritated every day and that he has asthma and has developed emphysema which Defendants will not treat (*Id.* at p 15). Plaintiff alleges that his asthma was manageable when he first came to Menard but that his asthma has been complicated by his sore throat (*Id.*). He claims that Fahim and Fuentes are retaliating against him by not allowing him to see a specialist (*Id.* at p. 16). Plaintiff also claims that he has been suffering from back and abdominal pain since 2007 which Defendants refuse to treat and he pain as progressively gotten worse (*Id.*). He has asked for MRIs and colonoscopies to see if there is a tumor or cist, or if he has a pulled muscle but Fuentas and Fahim will not treat him (*Id.* at p. 11). Plaintiff indicates that he has been living in pain for four years and that Wexford has not tried to find the cause of his pain (*Id.* at p. 17).

Plaintiff also offered several examples of Fahim's and Fuentes' deliberate indifference in his Complaint. On July 20, 2010 Plaintiff put in a sick call for his abdominal pain and back pain, including a bloated feeling in his abdomen (Doc. 1 at p. 6). Plaintiff saw Fuentes on July 27, 2010, but Fuentes told him that he was not being seen for his abdominal pain and his was not given medical treatment (*Id.*). Similarly, on July 31, 2010, Plaintiff was seen by Fuentes for throat irritation, but she

just flashed a light in his mouth and stated that she did not seen anything (*Id.* at p. 5). Plaintiff claims this is a pattern among the Defendants and Wexford of not treating his medical conditions (*Id.* at pp. 6-7). Plaintiff claims that he still has abdominal and back pain and is constipated but that Defendants will not address his condition (*Id.* at p. 9).

On April 3, 2013, Defendants filed a motion for summary judgment on the basis of exhaustion (Docs. 46 & 48). Specifically, Defendants argued that Plaintiff failed to exhaust his administrative remedies against them for his claims of deliberate indifference and retaliation. Defendants argued that Plaintiff's Complaint alleged that he did not receive adequate medical care from July 20, 2010 to September 27, 2010, which they labeled the "relevant time period" for Plaintiff's claims (Doc. 48). Defendants acknowledge that Plaintiff attached several hand-written grievances to his Complaint dated during the relevant time period but that the grievances did not contain a date stamp, a response from the counselor, or from the grievance officer (*Id.*). Thus, there was no official indication that the grievances had been reviewed by the institution. Further, Defendants pointed out that there was no indication from the records obtained from the Administrative Review Board that the grievances had been submitted to the ARB for review. Defendants did note that Plaintiff sent a letter to the ARB on September 2, 2010 complaining that some of his grievances were destroyed, but Defendants point out that Plaintiff refers to grievances filed in April and May of 2010, which predate the "relevant time period" in this case.

Plaintiff filed a Response (Doc. 56) to the motion for summary judgment, arguing that he was prevented from fully exhausting his administrative remedies by the institution. Plaintiff argued that he filed numerous grievances at Menard Correctional Center and some of the grievances were lost or went missing. Plaintiff acknowledged that the grievances attached to his Complaint were only hand-written copies of his original grievances as he copies them before sending them on to his

counselor, as many go missing after being submitted for review. Plaintiff points out that he has grieved this issue with his grievances going missing on numerous occasions with Menard officials.

**B.     *Pavey* Hearing**

As there were issues of fact as to whether Plaintiff fully exhausted his administrative remedies, the Court held an evidentiary hearing on October 15, 2013 in accordance with *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).**   At the hearing, Defendants offered four supplemental exhibits for the record.  As Plaintiff received copies of the exhibits and had no objections to their submission, the Court admitted the exhibits.  Defendants pointed out that there was no record from Menard Correctional Center or the ARB that any of the grievances Plaintiff attached to his Complaint were submitted or ruled on.  While Plaintiff argued that the grievances were destroyed, Defendants argued that there was no pattern of anyone tampering with Plaintiff's grievances.  Defendants pointed to examples in the record of Plaintiff submitting grievances prior to July 2010 which were properly exhausted.

The Court pointed out to Defendants that one of their supplemental exhibits referred to a grievance received by the ARB which dealt with abdominal pain and asthma concerns (See Doc. 64 Ex. 5).  The ARB issued a letter on June 2, 2011 regarding a grievance received on May 27, 2011 (*Id.*).  The grievance was denied on the merits as it had been fully exhausted by both the grievance officer (on April 21, 2011) and the chief administrative officer (on April 25, 2011).  Plaintiff's grievance disagreed with the health care unit's policy of only seeing inmates for one medical complaint at a time.  Offender had grieved that he was examined on March 24, 2011 for abdominal pain and when he asked to also be treated for his asthma, the treating doctor refused (*Id.*).  The Court was not provided with a copy of the actual grievance, so it was unclear whether Defendants Fahim and Fuentes were mentioned in the grievance, as the ARB only refers to Nwaobasi.

Defendants argued that the grievance exhausted on June 2, 2011 was no relevant because Plaintiff's Complaint only focused on a specific time period from July 2010 to September or October 2010, a time period Defendants referred to as the "relevant time period." Although the Complaint discusses ongoing pain and a failure to treat his various sources of pain, including back, abdominal, and asthma issues, since 2007, Defendants argue that the examples that Plaintiff refers to are from a limited period of time in 2011 and thus, Defendants argue, the June 2, 2011 grievance for medical issues stemming from March 2011 are irrelevant.

Plaintiff also testified at the *Pavey* hearing. Plaintiff testified that he submitted his grievances in a timely fashion but that his grievances went missing. Plaintiff noted that he has another case, which was severed from this case, pending against his counselor Frank Lawrence for stealing and destroying his grievances. Plaintiff indicates that he has written grievances against Frank Lawrence.

### III.   Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**

Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." **Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole,* **438 F.3d at 809**.

Under *Pavey,* the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey v. Conley, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742**. Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal

question." *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).

A.      Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall

submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

B.     Analysis

Here, the Court finds that Plaintiff has exhausted his administrative remedies against Defendants. Although Defendants argue that the Complaint is limited to a time period between July and October of 2010, Plaintiff's allegations in his Complaint are not limited to those specific dates. Plaintiff's Complaint alleges that he has continued to have problems with his asthma as well as pain in his back and abdomen and that Defendants have a continuing pattern of failing to treat his conditions. Plaintiff does point to specific examples of this pattern by Wexford and the medical Defendants which occurred between July and October of 2010, but he also indicates that this is an ongoing pattern, that

he has had these problems since 2007, and that his condition has continued to deteriorate without treatment. Further, threshold review conducted by District Judge Reagan did not pigeonhole Plaintiff's claims into such a restrictive time frame as Defendants suggest. This Court found that Plaintiff stated a claim for retaliation and for deliberate indifference to Plaintiff's serious medical needs for their refusal to permit Plaintiff to see a specialist (Doc. 10 at p. 3). In identifying Plaintiff's claims, the Court noted in its threshold Order that Plaintiff alleged that Defendant Wexford failed to provide Plaintiff with adequate medical care and that Fuentes and Fahim failed to properly treat his serious medical needs. The Court pointed out that Plaintiff alleged this failure to provide medical care was a result of Wexford's cost-saving policies which did not permit a referral to a specialist (*Id.* at p. 1-2). Thus, it is clear to the undersigned that Plaintiff's claims are not limited to those specific incidents which occurred from July to October 2010, but rather Plaintiff has alleged a continuing violation by Defendants for their failure to threat his medical condition as he alleged that these specific incidents were part of an ongoing pattern by these Defendants in denying him medical care for his conditions. *See Turley v. Rednour*, --F.3d --, 2013 WL 3336713 (7th Cir. July 3, 2013) ("**A violation is continuing where 'it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct.'"** (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)).

    As Plaintiff alleged a continuing violation, he was not required to grieve each incident separately. Plaintiff did not need to file "multiple, successive grievances raising the same issue," but rather Plaintiff satisfies his exhaustion requirement "once [the] prison has received notice of, and an opportunity to correct [the] problem." *Id.* Although not initially offered into evidence, Defendants, at the *Pavey* hearing, did offer additional grievances received by the ARB after October 2010. One of those exhibits was a letter from the ARB, dated June 2, 2011, which denies Plaintiff's grievance

received on May 27, 2011 for treatment of his abdominal and back pain (See Doc. 64 Ex. 5). Plaintiff's grievance, according to the ARB letter (as the grievance itself was not offered into evidence) grieved that he had been examined by a Dr. Nwaobasi on March 24, 2011 for his back pain but was denied treatment for his asthma at that time (*Id.*). Plaintiff was allegedly told by the doctor that he would have to put in a separate request to see a doctor about his asthma as an inmate can only be seen for one medical complaint at a time. The ARB notes in its response that the grievance regarding Plaintiff's medical condition was properly grieved through the institutional level, having been reviewed by both the grievance officer and the chief administrative officer. Thus, there is evidence that Plaintiff fully exhausted at least one grievance regarding his medical condition.

Although the Court notes that the ARB letter only mentions treatment by Dr. Nwaobasi, it is not clear the full extent of his grievance and whether his grievance can be considered to also include Defendants as Defendants failed to offer that grievance into evidence. Exhaustion is an affirmative offense and Defendants bear the burden of proving that Plaintiff failed to exhaust his administrative remedies. *Brengettcy v. Horton*, **423 F.3d 674, 682 (7th Cir. 2005).** Without the grievance itself, the only evidence before the Court is the ARB letter which demonstrates that there is at least some evidence in the record that Plaintiff exhausted at least one grievance on the continuing violation at issue in this case. Thus, the undersigned **RECOMMENDS** that the Court **FIND** that Defendants' have failed to meet their burden of showing that Plaintiff failed to exhaust his administrative remedies and **DENY** Defendants' motion for summary judgment.

The undersigned also notes that Plaintiff initially argued that he was thwarted in his attempts to properly exhaust his grievances from July through October 2013 because his counselor Frank Lawrence destroyed his grievances. Plaintiff points to numerous hand-written copies of grievances which were attached to his Complaint which he claims he never received back from his

counselor (See Doc. 1-1 at pp.6-15, 19).  Many of the grievances indicated that he has been suffering abdominal pain for years, as well as suffering from asthma, and that he has not been properly treated (*Id.* at p.19).  Plaintiff pointed out at the hearing that part of his original Complaint in this included a claim against Frank Lawrence for failing to respond to his grievances (Doc. 10 at p. 2).  That claim was eventually severed from this case.  Although the Court need not reach the issue of whether Plaintiff's attempts to exhaust were thwarted as the Court has found there is evidence in the record that Plaintiff fully exhausted his claims, the Court did find Plaintiff's testimony, that he tried to exhaust these individual grievances but was thwarted, to be credible.  Plaintiff's testimony was supported by his exhibits in evidence as well as Defendants' own argument that Plaintiff knows how to properly exhaust his grievances.  Defendants pointed out that Plaintiff had previously exhausted grievances and exhausted grievances after October 2010, indicating that he was aware of how the grievance process worked and knew how to properly exhaust his grievances.  Defendants offered the evidence to support their argument that Plaintiff did not file the grievances in this case, but the evidence also supported Plaintiff's position that he tried to exhaust those grievances as well, knowing how the grievance process worked, yet was thwarted by some external force.

### IV.  Conclusions and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Defendants' failed to meet their burden of proving that Plaintiff failed to exhaust his administrative remedies and **DENY** Defendants' motion for summary judgment (Docs. 46 & 48).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.** *See, e.g., Snyder v. Nolen***, 380 F.3d 279, 284 (7th Cir.**

**2004).**  Accordingly, Objections to this Report and Recommendation must be filed on or before **November 12, 2013**.

    **IT IS SO ORDERED**.
    DATED: October 25, 2013.

                                                    */s/ Stephen C. Williams*
                                                  STEPHEN C. WILLIAMS
                                                  United States Magistrate Judge