IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  11–cv–0682–MJR–SCW |
| | ) |
| MAGID FAHIM, | ) |
| FE FUENTES, and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Before the Court in this § 1983 civil rights case is Defendants' Motion for Summary Judgment (Doc. 97). Defendants Fahim and Fuentes, medical professionals at Illinois' Menard Correctional Center, challenge the sufficiency of Plaintiff's evidence as to the claims of deliberate indifference to Plaintiff's medical needs. Fahim and Fuentes further argue there is no evidence they retaliated against Plaintiff for filing grievances. Finally, Defendant Wexford Health Sources, Inc. (a private contractor that provides healthcare at Menard), argues that it is entitled to summary judgment because there is no evidence it had a policy which kept Plaintiff from being referred to an outside specialist.

Plaintiff has filed a Response (Doc. 116) to Defendants' motion. Defendants have filed a Reply (Doc. 117). For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment (**Docs. 97**) and **DIRECTS** the Clerk to

close this case.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2011, Plaintiff filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants Fuentes and Fahim were deliberately indifferent to various medical needs in failing to treat Plaintiff and by refusing to refer him to a specialist, thus violating the Eighth Amendment (Doc. 10). Plaintiff also alleged Fahim and Fuentes refuasal to treat his medical conditions was due to grievances Plaintiff filed against them. Plaintiff further brought a claim for deliberate indifference against Defendant Wexford, alleging it had a cost-saving treatment policy which encouraged medical staff not to refer Plaintiff to a specialist (*Id.*). Because this case comes before the Court at summary judgment, all facts are construed (and all reasonable inferences are drawn) in the light most favorable to Plaintiff. *Alexander v. Casino Queen*, 739 F.3d 972 (7th Cir. 2014).

Plaintiff's Complaint alleges he suffered from asthma, irritated throat, abdominal pain, back pain, and constipation. Plaintiff has suffered from asthma his whole life, from the time he was one and a half years old (Doc. 98-4 p. 15). His abdominal pain began in October or November 2007, with what felt like a knot on his lower right abdomen; it has progressively gotten worse (*Id.* at p. 18). He has not, however, been diagnosed with any condition in his abdomen (*Id.* at p. 19). Sometime in summer 2010, he began experiencing sharp pains in his back (*Id.* at p. 21). Sometime in 2010 he also began to develop a throat irritation (*Id.* at p. 23). He was never diagnosed with any conditions related to his back or throat (*Id.* at pp. 22-23).

While at Menard Correctional Center, Plaintiff's asthma was monitored by the asthma clinic; he received inhalers and numerous medications to deal with his asthma (Doc. 98-2; Doc. 98-5). Numerous prescriptions for asthma medication are reflected in prescription records covering 2010 and 2012 (Doc. 98-5).

Medical records indicate that on May 31, 2010, Plaintiff was seen by Dr. Fahim for his asthma (Doc. 98-7 p. 2). Fahim noted that Plaintiff used an Atrovent inhaler several times daily and noted that Plaintiff had mild wheezing in his left lung (*Id.*). Plaintiff was prescribed two different inhalers (Ventolin and Qvar) and was educated on how to properly use them (*Id.*).

Plaintiff was next seen for his asthma about a week later, by Dr. Fuentes on June 7, 2010 (Doc. 98-7 p. 3). Fuentes noted that Plaintiff had "fair control" over his asthma. "Fair control" is defined as having to use no more than one chest-relaxing inhaler per month, no more than once per week awakening with asthma symptoms, and no more than one emergency visit to the healthcare unit within a month (*Id.*). Fuentes noted that Plaintiff took Albuterol eight times a day and that his last X-ray (in 2007) showed no abnormalities (*Id.*).

Plaintiff saw a nurse for his asthma on September 7, 2010, at 8:15 a.m. (*Id.* at p. 13). The nurse noted wheezing and provided him with an Albuterol treatment (*Id.*). The nurse referred him to a physician's assistant ("PA") and Plaintiff was immediately taken to the healthcare unit, where he was seen by a nurse practitioner at 8:30 a.m. the same morning (*Id.* at p. 14). Plaintiff was prescribed Prednisone (a steroid) and scheduled for a priority recheck by the healthcare unit in one week (*Id.*;

Doc. 98-5 at p. 15). An X-ray was done on Plaintiff's chest the same day (*Id.* at p. 15; Doc. 98-6 p. 6). The X-ray showed no signs of active pulmonary disease (Doc. 98-6 p. 6).

One week later, on September 14, 2010, Plaintiff was seen by a medical doctor for his asthma (Doc. 98-7 p. 16). The doctor noted Plaintiff's breathing was much better than it had been on September 7, 2010, but that he still had some wheezing (*Id.*). Plaintiff was prescribed Advair for his asthma attacks (*Id.*; Doc. 98-5 p. 15). Plaintiff contends he never received the Advair due to cost constraints (Doc. 116-1).

Plaintiff was seen again on October 10, 2010 by a nurse (Doc. 98-7 p. 21). Plaintiff was experiencing wheezing and shortness of breath (*Id.*). Plaintiff was scheduled to see a doctor the next day, October 11, 2010 (*Id.*). Dr. Fahim saw Plaintiff and noted significant improvement from his asthma flare-up the day before, but that he still had some wheezing (*Id.* at p. 23). Plaintiff was prescribed Prednisone, Mucinex, and given a nebulizer treatment (*Id.*). He was also scheduled for a followup with the asthma clinic (*Id.*).

Plaintiff was eventually sent to a specialist in September 2012 for his continued shortness of breath issues (Doc. 98-7 p. 24). The specialist recommended a high-dose inhaled steroid + breathing-aid combination drug like Advair. Albuterol (which does not last as long as Advair) was also recommended to improve Plaintiff's breathing (*Id.*). The specialist also recommended that Plaintiff not be exposed to high amounts of dust, and that Xolair (another drug) may have to be tried if none of the other recommended treatments worked (*Id.*).

Plaintiff was also seen numerous times for his abdominal and back pain. A nurse saw him on July 20, 2010, for abdominal pain to his left side (Doc. 98-7, p. 4). Plaintiff explained that he had the pain for two years (*Id.*). The nurse provided Plaintiff with Maalox and instructed him to maintain a liquid diet for 24 hours (*Id.*). The nurse charted his bowel sounds and instructed Plaintiff to put in another sick call if his symptoms persisted (*Id.*).

Plaintiff was seen again for back pain on August 18, 2010 (*Id.* at p. 9). The pain was in his middle back on the left side (*Id.*). Plaintiff was provided with ibuprofen and referred to a doctor (*Id.*). Plaintiff saw a nurse practitioner two days later (*Id.* at p. 10). The nurse practitioner ordered an abdominal X-ray and a urinalysis (*Id.*). Plaintiff was also instructed to increase his water and fruit / vegetable intake, and to increase his exercise (*Id.*). The X-ray was performed on September 2, 2010, and found a moderate amount of stool in Plaintiff's colon (Doc. 98-6, p. 5). Plaintiff also saw Dr. Nwaobasi on September 2, 2010, for pain again in his left back and abdomen (Doc. 98-7, p. 12). Plaintiff indicated he was nauseated and that his last bowel movement was twenty-four hours prior (*Id.*). Nwaobasi noted Plaintiff's fecal retention in his colon and prescribed Metamucil (*Id.*). Plaintiff was also instructed to drink lots of water (*Id.*). He was seen again by a nurse on October 8, 2010 for his abdominal pain and antacids were recommended for his pain (*Id.* at pp. 19–20).

As to Plaintiff's complaints of throat irritation, Plaintiff presented to a nurse on July 31, 2010, complaining of difficulty swallowing food (Doc. 98-7 p. 6). Plaintiff

indicated he had been suffering from the symptoms for three months (*Id.*). The nurse noted that Plaintiff had a cough, post-nasal drip, and pain when swallowing (*Id.*). Plaintiff was referred to the doctor, directed to gargle with salt water, to increase his water intake, and was prescribed Tylenol (*Id.*). Plaintiff was seen by Dr. Fuentes for his throat irritation on August 5, 2010 (*Id.* at p. 7). Fuentes found nothing wrong and directed Plaintiff to continue to gargle with salt water (*Id.*). Plaintiff presented again to Dr. Fuentes on August 12, 2010 with throat issues (*Id.* at p. 8). Fuentes ordered an X-ray which was taken that same day (*Id.* at pp. 8 and 10; Doc. 98-6 p. 4). The X-ray showed no mass and the throat appeared normal (Doc. 98-6 p. 4). Fuentes instructed Plaintiff to chew his food well and to follow with a sip of water (*Id.* at p. 8).

## LEGAL STANDARDS

### 1. *Summary Judgment Standard*

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multi Corp., 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse

party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it is outcome determinative under applicable law. *Anderson,* 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. A mere scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmovant. *Reid v. Neighborhood Assistance Corp. of Am.*, 749 F.3d 581, 587–88 (7th Cir. 2014).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (abrogated on other grounds by *Spiegla II*, 481 F.3d at 966 (7th Cir. 2007)). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

2. *Eighth Amendment Standard*

Plaintiff alleges that Defendants Fahim and Fuentes were deliberately indifferent to his serious medical conditions, and that Wexford violated his Eighth

Amendment rights via a cost-saving policy which encouraged Fahim and Fuentes not to refer him to a specialist.

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

Though Defendants do not argue that Plaintiff's asthma constitutes a serious medical condition, they do dispute whether his abdominal pain, back pain, throat irritation and constipation rose to that level. There is no need to address that dispute, however, since the Court concludes Defendants did not act with the requisite mental state for Eighth Amendment liability to attach.

The subjective second prong of the deliberate indifference analysis requires a prisoner to show that officials acted with a sufficiently culpable state of mind: "deliberate indifference." The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense. *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tort-style "recklessness" is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). An inmate does not have to prove that his complaints of pain were literally ignored, only that the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

The Seventh Circuit has noted that the standard is a high hurdle because it requires a showing of something approaching a "total unconcern for the prisoner's welfare" in the face of serious risks. *Rosario v. Brawn*, 670 F.3d 816, 821–22 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). "Even if the defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843). Medical malpractice is not actionable under § 1983. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013). Prisoners are entitled to "adequate medical

care"—not to demand specific treatment—and prevailing on the subjective prong requires a showing that a medical professional made "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that" the defendant did not base his decisions on a medical judgment. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012).

## ANALYSIS

Neither Defendant Fahim nor Defendant Fuentes acted with deliberate indifference to Plaintiff's medical needs. Rather, the record reflects a course of treatment that may not seem ideal to Plaintiff, but is within Defendants' medical judgment.

### 1. *Fahim and Fuentes*

A review of the record before the Court shows no evidence that Defendants Fahim or Fuentes were deliberately indifferent to Plaintiff's medical needs. The record indicates both doctors saw Plaintiff for his asthma and reviewed and prescribed medications to treat his asthma symptoms. Fahim saw Plaintiff on May 31, 2010 and prescribed Plaintiff additional inhalers to treat his asthmatic symptoms (Doc. 98-7 p. 2). Fuentes also saw Plaintiff for his asthma, noted he had fair control of his symptoms, and continued with his prescriptions (*Id.* at p. 3). Plaintiff was also seen by Fuentes for his throat irritation and she (finding nothing wrong) directed him to gargle with salt water and return if he had additional problems. He returned a little over a week later and Fuentes ordered an X-ray—which was taken the same day—that showed nothing wrong with Plaintiff's throat. Medical records indicate

that both doctors treated Plaintiff for his symptoms and prescribed medications, took X-rays, and educated Plaintiff on his conditions.

Plaintiff's story is further contextualized by fact that not only did Fuentes and Fahim treat Plaintiff, other doctors and nursing staff did as well.  Plaintiff saw nurses and medical doctors several times for his asthma and, each time, Plaintiff was treated for his symptoms and prescribed different inhalers and medications to combat his asthma.  There is evidence that he was prescribed Prednisone on more than one occasion; he had chest X-rays which showed no signs of active pulmonary disease; and he was provided with myriad inhalers and nebulizer treatments (Doc. 98-7, pp. 14, 16, 21, and 23; Doc. 98-5, p. 15; Doc. 98-6, p. 6).

Regarding Plaintiff's back and abdominal pain, Plaintiff was seen by nurses on various occasions.  They charted his bowel sounds, provided him with Maalox or antacids, and instructed him to increase his water intake.  He was seen by Dr. Nwaobasi on September 2, 2010 , and found to have fecal retention in his colon (the cause of his pain) and prescribed Metamucil—surely not a criminally reckless course of treatment for a constipated patient (Doc. 98-7 p. 12).   Similarly, Plaintiff was seen by nurses for his throat irritation and given an X-ray which revealed no abnormalities (Doc. 98-7, pp. 8, 10).  The evidence indicates Plaintiff was being seen for all of his symptoms and that medical staff was trying to track down the source of his various maladies and treat them.  Such conduct does not constitute deliberate indifference.  *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)(deliberate **indifference where medical professional refused to refer to seek obvious alternative of**

referring inmate to a dentist); *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011) (not deliberately indifferent when took measures to address the pain by providing medication, even if ineffective, in the short time as record didn't show that "no minimally competent professional would have provided this regime of treatment"); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (not deliberately indifferent when inmate examined often, x-rays taken, and medications prescribed).

Plaintiff, however, argues that Defendants were deliberately indifferent because they continued to provide treatment that did not work for his medical ailments. His general proposition—that Defendants are not necessarily acting without deliberate indifference just because they provide *some* treatment—is correct. *See Roe v. Elyea*, 631 F.3d 843, 857–58 (7th Cir. 2011). Persisting in treatment known to be ineffective can constitute deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). But the record shows that his treatments had some effect, and in any event his case (where continued doctor visits, re-examination of the diagnosis, and prescription tweaks for a lifetime chronic condition over the course of several months) is distinguishable from the cases on which he relies. *See Greeno*, 414 F.3d at 655 (two-year delay to refer Plaintiff to a specialist where inmate suffered a deteriorating condition, had been trying to convince Defendants he had an ulcer, yet was banned from treatment could imply "gratuitous cruelty"). Medical staff were constantly providing Plaintiff with different types of inhalers and medication to improve his

asthma condition. And when Plaintiff *was* seen by a specialist in 2012, the specialist recommended the same treatments that Defendants had already provided (including Advair and Albuterol) (Doc. 98-7 at pp. 24–25). Plaintiffs treatment therefore did not lay so far outside the bounds of medical judgment as to constitute cruel and unusual punishment. Further, evidence shows the treatments helped with his asthma: followup appointments after an asthma attack indicated Plaintiff's breathing was increasingly better (Doc. 98-7, pp. 16, 23).

As to his abdominal pain, it was determined that Plaintiff had stool in his colon and he was prescribed various medications and provided with techniques to help with his condition (Doc. 98-7 at pp. 4, 9, 12, and 19-20). Plaintiff's responsive brief includes a note in which he indicates that he was diagnosed by another doctor with stool in his colon and treated with similar methods to what the healthcare unit provided Plaintiff in this case (See Doc. 116-3, p. 11). Thus, there is no evidence that Defendants continued with ineffective treatment, but rather that the treatment was effective and well within the bounds of medical judgment.

Finally, Plaintiff's argument that Defendants acted with deliberate indifference by not sending him to a specialist fails for largely the same reasons. Defendants course of action does not amount to deliberate indifference; it is simply a course of treatment with which Plaintiff merely disagrees. *See Berry*, 604 F.3d at 441; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Plaintiff is not entitled to demand a specific type of care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, Plaintiff's

subsequent visit to an asthma specialist sparked exactly the same course of treatment that had been provided by Defendants. (Likewise, Plaintiff's own exhibits indicate that a later doctor diagnosed Plaintiff with stool in his colon, the source of his back and abdominal pain and recommended a similar course of treatment as Defendants). In short, there is no evidence that Defendants' chosen course of treatment was deliberately indifferent.

2. *Wexford*

Wexford can be held liable for deliberate indifference to Plaintiff's medical care only if it maintained a policy or custom that violated Plaintiff's rights. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (corporations that contract with prison and jail facilities to provide medical care are treated as municipalities for purposes of § 1983); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) (municipality may be liable for harm to persons incarcerated under its authority if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of prisoners.). Such a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Minix*, 597 F.3d at 832. In other words, the corporation can be held liable when the implementation of the policy or custom inflicts an injury on the plaintiff. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

Plaintiff fails to allege in his responsive brief any policy of Wexford's that has violated his rights. He merely states that Defendants have failed to send him to see outside specialists and that their ineffective treatment is an ongoing pattern. He

does not point to any policy of Wexford's that caused this ineffective treatment. Plaintiff originally alleged in his Complaint that Wexford had cost-saving policies which prevented his referral to a specialist but he has not pointed to any such policies in his brief. He states at one point that he was told that he could not have an Advair inhaler due to costs, but there is no evidence in the record to link that statement to a Wexford policy. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (prisoner's speculation re: motive cannot overcome summary judgment). Indeed, maintaining that cost control was Defendants' driving force seems to be a misplaced argument by a Plaintiff who was X-rayed multiple times, prescribed and given myriad drugs, and eventually sent to a pulmonologist to receive the same care he had been given in prison.

More importantly, as discussed above, Plaintiff's rights were not violated. Though an organization like Wexford is answerable for its own policies, "if a given policy causes no harm to the plaintiff there is no possible relief." *Ray*, 706 F.3d at 866. *See id.* ("It is unnecessary to decide what [Wexford's] policy may be, since [Plaintiff] has not established a constitutional problem with his treatment and thus did not suffer actionable injury from the policy he attributes to the corporation.").

### PLAINTIFF'S RETALIATION CLAIMS FAIL

Plaintiff alleges that Defendants' purported failure to provide him medical care was driven by a retaliatory animus related to his filing grievances. An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.

2000). Establishing a claim of retaliation requires a prisoner to show: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *See also Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. "the harm would have occurred anyway." *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011). At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 544 F.3d 752, 757 (7th Cir. 2008); *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).

Here, there Plaintiff's retaliation claims fail because, as discussed above, there is no evidence that Defendants refused to provide him medical care as Plaintiff alleges. As previously stated, the evidence in the record is that Plaintiff was seen on numerous occasions by healthcare staff, including Fahim and Fuentes, and was treated for his conditions. While Plaintiff argues in his responsive brief that Defendants denied and delayed him care in retaliation, he has not pointed to any evidence in the record to suggest that this occurred or that their actions were done in retaliation. Plaintiff testified that Fahim refused to see him for his abdominal pain and back pain and that Fuentes refused to treat him for his back and asthma, but the evidence suggests that Fuentes saw Plaintiff for his asthma condition and various other medical personnel saw Plaintiff for his abdominal and back pain. Further,

Plaintiff was also seen for various medical conditions after he filed grievances (See Docs. 98-5 and 98-7). Plaintiff testified only that Fuentes mentioned to him that she had seen his grievance and stated that they were doing all that they could to help him (Doc. 98-4 p. 13). This does not evidence any retaliation on Fuentes part, only that she was treating him. Only speculation could link Fuentes' statement to some (again, nonexistent) retaliatory behavior. And speculation does not suffice to stave off summary judgment. *Devbrow v. Gallegos*, 735 F.3d at 588.

There is no evidence of retaliation on the record, and Defendants are entitled to summary judgment.

## CONCLUSION

For the reasons explained above, the Court holds that Defendants Fuentes, Fahim, and Wexford Health Sources, Inc., are entitled to summary judgment. The Court **GRANTS** Defendants' motion for summary judgment (**Doc. 97**). All motions are moot. No claims remain, so the Clerk is **DIRECTED** to close this case. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.
DATED: September 18, 2014

                                          s/ *Michael J. Reagan*
                                          **MICHAEL J. REAGAN**
                                          United States District Judge